**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **EBF HOLDINGS LLC d/b/a EVEREST BUSINESS FUNDING,**<br>102 West 38th Street, 6th Floor<br>New York, New York 10018<br><br>*Plaintiff,* | * * * * | |
| v. | * | Case No. ______________ |
| **ELITE DEBT CONSOLIDATION PROFESSIONALS, LLC d/b/a WILLIAM POWER & ASSOCIATES LLC,**<br>650 Island Way #208<br>Clearwater Beach, Florida 33767<br>Serve Registered Agent:<br>7901 4th Street N, Suite 300<br>St. Petersburg, Florida 33702<br><br>*Defendant.* | * * * * * * | |

*       *       *       *       *       *       *       *       *       *       *       *       *

**VERIFIED COMPLAINT FOR DAMAGES,**
**TEMPORARY RESTRAINING ORDER, AND INJUNCTIVE RELIEF**

EBF Holdings LLC d/b/a Everest Business Funding (“Everest”), through its attorneys, files this Complaint against Defendant, Elite Debt Consolidation Professionals, LLC d/b/a William Power & Associates, LLC (“William Power”), alleging the following:

## INTRODUCTION

Everest seeks immediate injunctive relief and damages against a debt collection company who sold thousands of Everest's accounts worth over 100 million dollars without Everest's knowledge or prior approval as was required by the parties' contract for debt collection services. In so doing, William Power breached its contractual obligation to secure Everest's customers' confidential information and profited from selling accounts without authorization. Without immediate injunctive relief, Everest and its customers' confidential information, including personally identifiable information, will be further released, risking significant and ongoing harm to Everest and its customers.

## PARTIES AND JURISDICTION

1. This is an action for damages and injunctive relief arising out of William Power's acts and omissions described herein.

2. Plaintiff Everest is a Delaware limited liability company with a principal address of 102 West 38th Street, 6th Floor, New York, New York 10018.

3. Defendant Elite Debt Consolidation Professionals, LLC d/b/a William Power & Associates, LLC is a limited liability company organized under Florida law with a principal address of 650 Island Way #208, Clearwater Beach, Florida 33767.

4. This Court has general personal jurisdiction over William Power because William Power's principal place of business is in St. Petersburg, Florida and it is domiciled in Florida.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Everest brings a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

## FACTS

### A. Everest Contracted With William Power for Debt Collection Services.

6. Everest, through its subsidiaries, including EBF Partners, LLC, Vader Servicing, LLC, and Pop Cash, LLC, provides working capital to small and medium-sized businesses across the United States through revenue-based financing.

7. On or about September 29, 2025, Everest entered into a Standard Service Agreement with William Power (the "Collection Agreement") for debt-collection services. Everest ("The Client") then began referring unpaid customer accounts to William Power ("The Agency") for collection activity. Everest did not sell those accounts to William Power and retained ownership of the accounts. A true and correct copy of the Collection Agreement is attached as **Exhibit A**.

8. The Collection Agreement provides, in part: "The Agency shall use reasonable effort to effect collection of Accounts referred to it by The Client. Unless otherwise instructed by The Client, all collection efforts shall be conducted in The Agency's name." Exhibit A, ¶ 2.

9. The Collection Agreement obligates William Power to keep all information relating to Everest's accounts in "utmost confidence" because the information contains sensitive personally identifiable information relating to Everest's customers. Specifically, it requires that:

> "The Agency shall maintain and hold all information and records pertaining to The Client's Accounts, and any and all other information pertaining to The Client ("Confidential Information") in *utmost confidence*. The Agency has implemented at each service location physical and information security and data protection safeguards against the destruction, loss, theft, unauthorized access, unauthorized use, or alteration of Confidential Information, including Customer Information . . ."

*Id.*, ¶ 5.5 (emphasis added).

10. Under the Collection Agreement, William Power agreed to take reasonable measures to protect the Confidential Information disclosed to it by Everest at a level "no less than those it uses to protect its own confidential materials." *Id.*, ¶ 5.3.

11. Under the Collection Agreement, William Power was obligated to ensure that any "employee[], contractor[], or agent[]" who accessed Confidential Information was "bound by confidentiality obligations at least as protective as those set forth in this Agreement." *Id.*

12. Under the Collection Agreement, William Power agreed that it

> "will not enter into any agreement to settle any Account without the prior written approval of the Client, who will have the absolute right to accept or reject any settlement outside the parameters provided by The Client to The Agency. The Agency will notify The Client promptly of the terms of any settlement offer received by The Agency."

*Id.* ¶ 2.

13. Under the Collection Agreement, William Power was not permitted to subcontract or assign "any portion of the Collection Services (including an assignment of this Agreement)" *without Everest's written approval*. *Id.*, ¶ 8.

14. Under the Collection Agreement, in the event William Power sought to subcontract or assign any portion of the Collection Services (including an assignment of the Collection Agreement), Everest retained the right to reject any subcontractor or assignee in its sole discretion. *Id.*

15. In reliance on William Power's assent to the contractual obligations under the Agreement, Everest provided William Power with unredacted copies of customer contracts, applications, and related records

containing the private and personal information of Everest's customers and their personal guarantors (collectively, the "Protected Information").

16. The Protected Information also included private and/or sensitive information such as Social Security numbers, home and business addresses, telephone numbers, email addresses, account/deal numbers, balances, financial information, payment information, and other confidential customer and guarantor information.

17. A comprehensive list of all customer files assigned to William Power (which list includes each business name, guarantor name, date of placement, state of legal residency of business, and the original amount of each debt owed to Everest at the time of transfer) has been redacted to remove the disclosure of the business and guarantor names, but is otherwise complete, and is attached and incorporated by reference as **Exhibit B**.

### B. William Power Assigned and/or Sold Accounts to Unauthorized Third Parties Without Everest's Written Authorization and Failed to Safeguard Customers' Protected Information.

18. William Power sold, assigned, or transferred accounts to other persons or entities that conducted collection activity without Everest's knowledge or authorization as required under the Collection Agreement.

**Customer 1**

19. On March 18, 2026, Everest assigned William Power to collect an Everest (Vader Servicing) account for Customer 1.[1]

20. On or about May 27, 2026, Everest obtained a document showing that "Lakeside Group Services"—an entity Everest did not know, work with, or authorize to act on its behalf—claimed to represent Vader Servicing in collection efforts against Customer 1. Customer 1 signed the document on May 27, 2026. It stated that the first payment of $208.33 would be made on May 28, 2026, followed by twelve additional monthly payments in the same amount, and authorized Lakeside Group Services to process those payments. A true and correct copy is attached as **Exhibit C**.

21. Paragraph 8 of the Collection Agreement, titled "Assignment," provides: "The Agency shall obtain The Client's written approval before subcontracting or assigning any portion of the Collection Services (including an assignment of this Agreement). The Client may reject any subcontractor or assignee in its sole discretion."

22. William Power breached Paragraph 8 of the Collection Agreement by assigning or subcontracting all or part of the Collection Services for

[1] The identities of the customers are not disclosed in this filing but a reference sheet will be provided to William Power.

Customer 1's account file to Lakeside Group Services without first obtaining Everest's written approval.

23. William Power also breached Paragraph 5 of the Collection Agreement by failing to keep Everest's information and records for Customer 1 confidential and by failing to prevent unauthorized access to and use of that Confidential Information.

24. Everest did not authorize or sign the settlement agreement, did not authorize Lakeside Group Services to enter into the agreement on its behalf, and received no portion of the settlement funds collected by Lakeside Group Services.

**Customer 2**

25. On March 20, 2026, Everest's subsidiary Vader Servicing assigned William Power an account for Customer 2 for collection.

26. On or about July 21, 2026, Everest obtained a document showing that "Regional Claims Office"—an entity Everest did not know, work with, or authorize to act on its behalf—claimed to represent Vader Servicing in collection efforts against Customer 2. A true and correct copy is attached as **Exhibit D**.

27. The document was signed by "Jessica Barnes," identified as Client Services Director of Regional Claims Office, for an undisclosed amount. *Id.*

28. The July 21, 2026 document further stated that the settlement had been agreed to on June 8, 2026, and that "*REGIONAL CLAIMS OFFICE, Purchased this account with the legal right to collect, settle or close for the amount noted above*." *Id*. (emphasis added).

29. William Power breached its obligations under Paragraph 8 of the Collection Agreement by failing to obtain written approval before assigning or subcontracting all or a portion of the Collection Services for the Customer 2 account file to Regional Claims Office.

30. William Power breached Paragraph 5 of the Collection Agreement by failing to keep Everest's information and records for Customer 2 confidential and by failing to prevent unauthorized access to and use of that Confidential Information.

31. Everest did not authorize or sign the settlement agreement, did not authorize Regional Claims Office to enter into the agreement on its behalf, and received no portion of the settlement funds collected by Regional Claims Office. Everest also received no proceeds from any amount William Power received from selling Customer 2's file to Regional Claims Office.

**Customer 3**

32. Everest has learned that another account, Customer 3, referred to William Power on or about March 20, 2026, was assigned without authorization to Regional Claims Office. A true copy of a document showing

that "Regional Claims Office" claimed to represent Vader Servicing in collection efforts against Customer 3 is attached as **Exhibit E**. The July 21, 2026 document also stated that the settlement had been agreed to on July 16, 2026, and that "*REGIONAL CLAIMS OFFICE, Purchased this account with the legal right to collect, settle or close for the amount noted above.*" *Id.* (emphasis added). William Power breached paragraph 8 (Assignment) and paragraph 5 (Confidentiality) through this unauthorized assignment.

**<u>Customer 4</u>**

33. On January 23, 2026, Everest assigned William Power to collect an Everest (Vader Servicing) account for Customer 4.

34. On or about July 9, 2026, Everest obtained a document showing that "Stonington Park Mediations"—an entity Everest did not know, work with, or authorize to act on its behalf—claimed to have acquired the Vader Servicing account for Customer 4. A true and correct copy is attached as **Exhibit F**. The July 9, 2026, document, signed by Rachel Chambers of Stonington Park Mediations, states that Stonington Park Mediations settled Customer 4's account for $2,501.20. *Id.*

35. Everest did not authorize or sign the settlement agreement, did not authorize Stonington Park Mediations to enter into the agreement on its behalf, and received no portion of the settlement funds collected by Stonington

Park Mediations. Everest also received no proceeds from any amount William Power received from selling Customer 4's file to Stonington Park Mediations.

**Customer 5**

36. On March 20, 2026, Everest (Vader Servicing) referred an account for Customer 5 to William Power.

37. On or about July 29, 2026, Everest obtained a document showing that "Regional Claims Office" claimed to be representing Everest in collections against Customer 5. A true and correct copy of which is attached hereto as **Exhibit G**. As with the other accounts, Everest did know or approve an assignment to Regional Claims Office. The document evidencing same was signed by a "Jessica Barnes" as Client Services Director of Regional Claims Office, for an undisclosed amount. *Id.* The July 29, 2026 document, affirmatively stated that the settlement was agreed upon on July 28, 2026, and that "*REGIONAL CLAIMS OFFICE, has the legal authority to hereby offer and authorize the settlement of the above reference outstanding debt incurred by you.*" *Id.* (emphasis added).

38. Everest did not authorize the settlement, did not sign the settlement agreement, did not authorize Regional Claims Office to enter into same on its behalf, did not receive any portion of the settlement collected by Regional Claims Office, or did not receive any portion of any purchase amount

William Power received from the sale of Customer 5's file to Regional Claims Office.

## COUNT ONE – BREACH OF CONTRACT

39. Everest incorporates the preceding paragraphs as though fully set forth herein.

40. The Collection Agreement is an integrated written contract that governs the parties' rights and obligations for collecting debts owed to Everest and its subsidiaries.

41. William Power materially breached Paragraph 8 by assigning, selling, or transferring accounts to third parties without Everest's written approval. Although its investigation is ongoing, Everest has learned that Regional Claims Office, located at 135 W. Central Boulevard, Orlando, Florida 32801, entered into purported settlement agreements involving Everest accounts without Everest's approval, consent, or knowledge.

42. William Power further breached the Collection Agreement by selling, assigning, or transferring accounts belonging to Everest or its subsidiaries to Stonington Park Mediation, an entity operating in Lockport, New York. Everest neither knew of nor approved any such assignment or sale. These actions violated Paragraph 8, which requires Everest's written approval before William Power may subcontract or assign any portion of the Collection Services.

43. Everest provided William Power with confidential information concerning the customers it funded, including bank account numbers, Social Security numbers, dates of birth, and other personally identifying information. This information constitutes Confidential Information under the Collection Agreement.

44. Customers who settled accounts with unauthorized third parties have demanded releases from Everest. Everest cannot provide such releases because it has not received payment from either the customer or the third-party collectors.

45. William Power breached their obligation to protect Confidential Information by sharing it with third parties without Everest's approval. Everest does not know those entities' confidentiality policies or procedures and thus whether the information is safeguarded, and the unauthorized disclosure of customers' personally identifiable information exposes Everest to liability to customers.

46. William Power's breaches, including its failure to safeguard Confidential Information and their unauthorized transfer of collection accounts, have harmed Everest through the expenditure of legal fees, potential liability to customers, lost collections revenue, and reputational harm with its customers. In addition, customers who claim they paid unauthorized third-

party collectors may refuse to pay Everest on the same accounts, directly causing Everest financial harm.

WHEREFORE, Everest respectfully requests that this Court enter judgment in its favor and against William Power in an amount to be proven at trial, together with prejudgment and post-judgment interest, attorneys' fees and costs and such other and further relief as this Court deems just and proper.

**COUNT TWO - MISAPPROPRIATION OF TRADE SECRETS**

*Violation of Florida Uniform Trade Secrets Act, Fl. Stat. §§ 688.01, et seq.*

47. Everest incorporates the preceding paragraphs as though fully set forth herein.

48. Florida Statutes §§ 688.001, *et seq.*, codifies Florida's Uniform Trade Secrets Act ("FUTSA").

49. The Confidential Information Everest provided to William Power for collection purposes—including balances owed, bank account information, and personally identifiable information—constitutes a trade secret under Florida Statutes § 688.002(4). FUTSA defines a "trade secret" as information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives actual or potential independent economic value from not being generally known to, or readily ascertainable by proper means by, others who can obtain economic value from its disclosure or use; and (b) is subject to reasonable efforts to maintain its secrecy.

50. The Confidential Information is a compilation of private customer information, including debt amounts, bank account numbers and institutions, dates of birth, and other financial information.

51. Everest took reasonable steps to preserve the secrecy of the Confidential Information, including requiring confidentiality protections in Paragraph 5 of the Collection Agreement and prohibiting William Power from assigning accounts to third parties without Everest's written approval.

52. William Power misappropriated the Confidential Information within the meaning of Section 688.002 by breaching their duty to preserve its secrecy and disclosing it without Everest's express or implied consent to an unknown number of third-party collectors.

53. Upon information and belief, William Power sold accounts despite knowing the Confidential Information was subject to the confidentiality provision in Paragraph 5 of the Collection Agreement and that Everest had not approved any such sale. Documents obtained by Everest indicate that third parties claim to own Everest accounts without Everest's authorization.

54. Upon information and belief, William Power were unjustly enriched by selling accounts without written authorization. Because William Power did not own the debts, any sale was wrongful and relied on a misrepresentation of ownership.

55. Unless William Power is enjoined from continuing collections, Everest will suffer harm from the disclosure of its customers' data and Everest faces a substantial risk of reputational injury and claims customers whose information was misappropriated.

WHEREFORE, Everest seeks damages against William Power and immediate injunctive relief, including a temporary restraining order and preliminary injunction enjoining William Power from contacting Everest's customers, assigning, selling, and/or transferring any account information to third parties, plus other relief available under FUTSA, including attorneys' fees, costs, and such other and further relief as justice may require.

**COUNT THREE**

*Violation of Defend Trade Secrets Act, 18 U.S.C. § 1839, et seq.*

56. Everest incorporates the preceding paragraphs as though fully set forth herein.

57. The Confidential Information Everest provided to William Power for collection purposes—including balances owed, bank account information, and personally identifiable information—constitutes a trade secret under 18 U.S.C. § 1839(3). The Defend Trade Secrets Act defines a trade secret as "all forms of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures,

programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: The owner there has taken reasonable measures to keep such information secret and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *See* 18 U.S.C. § 1839(3).

58. The Confidential Information is a compilation of private customer information, including debt amounts, bank account numbers and institutions, dates of birth, and other financial information. The Confidential Information has independent economic value because it is a list of customers that could be solicited for funding transactions and engage in competing offers.

59. Everest took reasonable steps to preserve the secrecy of the Confidential Information, including requiring confidentiality protections in Paragraph 5 of the Collection Agreement and prohibiting William Power from assigning accounts to third parties without Everest's written approval.

60. William Power misappropriated the Confidential Information within the meaning of the Defend Trade Secrets Act by breaching their duty to preserve its secrecy and disclosing it without Everest's express or implied consent to third parties. William Power knew that the information it sold to

third parties was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret.

61. William Power sold accounts for monetary value despite knowing the Confidential Information was subject to the confidentiality provision in Paragraph 5 of the Collection Agreement. Documents obtained by Everest indicate that third parties claim to own Everest accounts without Everest's authorization.

62. William Power was unjustly enriched by selling accounts without written authorization. Because William Power did not own the debts, any sale was wrongful and relied on a misrepresentation of ownership.

63. Unless William Power is enjoined from continuing collections, Everest will suffer harm from the disclosure of its customers' data and Everest faces a substantial risk of reputational injury and claims customers whose information was misappropriated.

WHEREFORE, Everest seeks damages against William Power and immediate injunctive relief, including but not limited to a temporary restraining order and preliminary injunction enjoining William Power from contacting Everest's customers, assigning, selling, and/or transferring any account information to third parties, plus other relief available under FUTSA, including attorneys' fees, costs, and such other and further relief as justice may require.

**COUNT FOUR**

*Injunction under Fed. R. Civ. P. 65*

64. Everest incorporates the preceding paragraphs as though fully set forth herein.

65. Everest seeks an injunction, including a temporary restraining order and preliminary injunctive relief to prevent William Power from continuing to sell, assign, or distribute its Confidential Information without written authorization.

66. Without immediate injunctive relief, Everest will suffer immediate irreparable harm because third party debt collectors have settled claims with Everest's customers but not turned over any settlement proceeds to Everest. Further, Everest faces the risk of liability from customers whose information was disseminated, without Everest's consent, to unknown third parties.

67. Everest has a likelihood of success on the merits of its breach of contract claim because William Power's actions are in violation of the confidentiality and non-assignment provisions.

68. The balance of equities weighs in favor of Everest because Everest relied on its contract with William Power when it referred accounts to William Power for debt collection services. William Power acted intentionally and knowingly sold accounts it did not own to third parties.

69. The public interest favors injunctive relief for Everest because customers have the right to know that when they provide confidential information to one they are doing business with that such information will be safeguarded.

September 25, 2026

Respectfully submitted,

*/s/ Mark Edelson*

Mark Edelson (Florida Bar No. 96337)
medelson@silvermanthompson.com
William N. Sinclair (*Pro Hac Vice* To Be Filed)
bsinclair@silvermanthompson.com
Greg Bailey (*Pro Hac Vice* To Be Filed)
gbailey@silvermanthompson.com
Silverman Thompson Slutkin & White
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(T) (410) 385-2225
(F) (443) 547-2432

*Attorney for EBF Holdings, LLC*
*d/b/a Everest Business Funding*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **EBF HOLDINGS LLC d/b/a EVEREST BUSINESS FUNDING,** | * * | |
| *Plaintiff,* | * | |
| v. | * | Case No. _______________ |
| **ELITE DEBT CONSOLIDATION PROFESSIONALS, LLC d/b/a WILLIAM POWER & ASSOCIATES LLC,** | * * * | |
| *Defendant.* | * | |

* * * * * * * * * * * * *

**VERIFICATION**

I, Michael Reppas, Esq., pursuant to 28 U.S.C. § 1746, swear under penalty of perjury, that I am the Chief Legal Officer at EBF Holdings LLC, that I have read the allegations in the Verified Complaint for Damages, Temporary Restraining Order, and Injunctive Relief, and that the factual allegations set forth in paragraphs 6 through 38 are true and correct to the best of my knowledge, information, and belief.

Dated: September 22, 2026

[signature]
Michael Reppas, Esq.